## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WISCONSIN

---

Cambrians for Thoughtful Development, U.A.
an unincorporated nonprofit association,
307 Mary Street
Cambria, WI 53923,

John Mueller,
307 Mary Street
Cambria, WI 53923,

Leonore Neumann
109 East Commerce Street
Cambria, WI  53923

                                              Case No. 3:09-cv-139

          Plaintiffs,

   v.

Didion Milling, Inc., a domestic business,
520 Hartwig Blvd.
P.O. Box 400
Johnson Creek, WI 53038,

Didion Ethanol, LLC
520 Hartwig Blvd.
P.O. Box 400
Johnson Creek, WI 53038,

          Defendants.

---

## SECOND AMENDED COMPLAINT

---

Plaintiffs, Cambrians for Thoughtful Development, John Mueller, and

Leonore Neumann, by their attorneys, McGillivray Westerberg & Bender LLC,

complain against Defendants, Didion Milling, Inc. and Didion Ethanol LLC, as follows:

## INTRODUCTION

1.      This is a civil action for declaratory and injunctive relief and for the imposition of civil penalties, together with costs and fees, under the Clean Air Act ("the Act" or "CAA"), 42 U.S.C. §§ 7401 *et seq.*

2.      Cambrians for Thoughtful Development, John Mueller, and Leonore Neumann (together, "Cambrians"), seek an order declaring that Didion Milling, Inc. and Didion Ethanol, LLC (collectively, "Didion"), have violated the Clean Air Act in the manners set forth herein, enjoining Didion from operating in violation of Clean Air Act requirements, for an order requiring Didion to off-set its unlawful pollution, and for an order requiring Didion to pay penalties, costs of a mitigation project, and the costs of litigation of this action.

## PARTIES

3.      Plaintiff, CAMBRIANS FOR THOUGHTFUL DEVELOPMENT, U.A., is an unincorporated nonprofit, non-stock association, organized pursuant to chapter 184 of the Wisconsin Statutes and comprised of citizens living in and around the Village of Cambria, Columbia County, Wisconsin.  Its address is 307 Mary Street, Cambria, Wisconsin, and John Mueller is its registered agent.

4.      CAMBRIANS FOR THOUGHTFUL DEVELOPMENT, U.A. was formed in 2002 in response to concerns about a proposed ethanol plant development in the Village of Cambria, Wisconsin, and was registered with the State of Wisconsin in 2007.

5.      Plaintiff, JOHN MUELLER, is an adult resident of the State of Wisconsin residing at 307 Mary Street, Cambria, Wisconsin.  He is a member of Cambrians for Thoughtful Development, and lives within approximately 1/2 mile of the Didion milling and ethanol plant in Cambria, Wisconsin.

6.      Plaintiff LEONORE NEUMANN is an adult resident of the State of Wisconsin residing at 109 East Commerce Street in Cambria, Wisconsin.  She is a member of Cambrians for Thoughtful Development and lives approximately ¼ mile from the Didion milling and ethanol plant in Cambria, Wisconsin.

7.      Cambrians live, work, attend school, and recreate within the airshed that is impacted by air pollution emissions from the milling and ethanol plant at issue in this case.

8.      Cambrians are threatened with increased health problems due to the illegal air pollution from the Didion milling and ethanol plant complained of herein. These health problems include, among others, aggravated asthma and breathing difficulties.

9.      Cambrians' enjoyment of outdoors activity is diminished due to the air pollution emissions from the Didion Milling operation, due to the real and/or perceived impact of pollution from the facility.

10.      Cambrians also have a reasonable fear that the air pollution from the Didion milling and ethanol plant is negatively affecting their health.

11.      Defendant, DIDION MILLING, INCORPORATED, is a domestic corporation in the State of Wisconsin that owns and operates a number of industrial-agricultural facilities across the State, including a milling plant in Cambria,

3

Wisconsin.  DIDION MILLING, INCORPORATED, owns and operates other domestic corporations in Wisconsin, including Didion Ethanol, LLC, and Grand River Distribution, LLC (with Didion Milling, Inc., collectively referred to herein as "Didion.")  Didion's corporate offices and registered agent, John A. Didion, are located at 520 Hartwig Boulevard, Johnson Creek, Wisconsin.

12.     Defendant DIDION ETHANOL, LLC, is a Wisconsin limited liability corporation in the State of Wisconsin wholly owned by Didion Milling, Inc. It operates an ethanol plant in Courtland Township, Columbia County, adjacent to the milling plant referred to in Paragraph 10.  Didion Ethanol, LLC's corporate offices and registered agent, John A. Didion, are located at 520 Hartwig Boulevard, Johnson Creek, Wisconsin.

13.     The milling plant at issue in this case is located at 501 South William Street in Cambria, Wisconsin.  The ethanol plant at issue in this case is located adjacent to the milling plant in Courtland Township, Wisconsin.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over the claims set forth in this Complaint pursuant to 42 U.S.C. § 7604(a), 28 U.S.C. § 1331, and 28 U.S.C. § 2201.  The relief requested by Cambrians is authorized by statute in 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 7604.

15. Venue is proper in this Court pursuant to 42 U.S.C. § 7604(c)(1) because Cambrians' claims are for violations of an "emission standard or limitation," as that phrase is defined in 42 U.S.C. § 7604, by Didion's milling and ethanol

facilities, which constitute a stationary source located in the Western District of

Wisconsin judicial district.

## NOTICE

16. On February 18, 2008, Cambrians served a "Notice of Intent to Sue"

on Didion pursuant to 42 U.S.C. § 7604(b) and 40 C.F.R. part 54.  Cambrians served a

copy of the Notice of Intent to Sue on Didion Milling, Inc., Didion Ethanol, LLC,

Grand River Distribution, LLC, John A. Didion, the United States Attorney General,

the Wisconsin Attorney General, the Administrator and Regional Administrator of

the United States Environmental Protection Agency, and the State of Wisconsin by

certified United States mail, return receipt requested.

17. On March 10, 2009, Cambrians served a "Supplemental Notice of

Intent to Sue" on Didion pursuant to 42 U.S.C. § 7604(b) and 40 C.F.R. part 54.

Cambrians served a copy of the Notice of Intent to Sue on Didion Milling, Inc.,

Didion Ethanol, LLC, Grand River Distribution, LLC, John A. Didion, the United

States Attorney General, the Wisconsin Attorney General, the Administrator and

Regional Administrator of the United States Environmental Protection Agency, and

the State of Wisconsin by certified United States mail, return receipt requested.

18. More than 60 days have passed since Cambrians served the Notice

of Intent and Supplemental Notice of Intent.

## STATUTORY AND REGULATORY BACKGROUND

19.    The objective of the federal Clean Air Act is "to protect and

enhance the quality of the nation's air resources so as to promote the public health and welfare and the productive capacity of its population."  CAA § 101(b), 42 U.S.C. § 7401(b).

20.    The United States Environmental Protection Agency ("USEPA") has established National Ambient Air Quality Standards ("NAAQS") for "criteria pollutants," including sulfur dioxide (SO₂), nitrogen oxide (NOx), ozone, particulate matter smaller than ten microns (PM10), particulate matter smaller than 2.5 microns (PM2.5), lead, and carbon monoxide (CO).  42 U.S.C. § 7602(e); 40 C.F.R. part 50. Areas where the ambient air meets the NAAQS are designated as "attainment" areas.  42 U.S.C. § 7407(d).  Areas where the ambient air does not meet the NAAQS for a particular criteria pollutant, or areas that contribute to the ambient quality in downwind areas not meeting the NAAQS, are designated "nonattainment" for that pollutant.  *Id.*

21.    States are required to adopt plans to implement the federal Clean Air Act.  42 U.S.C. § 7410(a).  These plans, called State Implementation Plans or "SIPs," contain enforceable regulations that are designed, among other things, to prevent degradation of air quality in attainment areas and to clean up the air in nonattainment areas.

22.    Pursuant to the Act, each state is required to submit a proposed SIP to USEPA, and if the proposed SIP satisfies the requirements of the Act, it is approved by USEPA through federal notice and comment rule making.  Once a state's SIP is approved by USEPA, it is published in the Code of Federal Regulations and can be enforced by the state, USEPA, or citizens.

23.    Wisconsin has a USEPA approved SIP.  *See* 40 C.F.R. § 52.2569, *et seq*.

24.    Among the provisions contained in the Wisconsin SIP are most provisions of Wis. Stat. ch. 285 as well as Wis. Admin. Code chs. NR 405, NR 406, NR 407, NR 415 and NR 439.

25.    Under the SIP, the Wisconsin Department of Natural Resources ("DNR") may impose conditions on any air pollution control permit, Wis. Stat. § 285.65, including monitoring, record-keeping, reporting, and compliance certification requirements, Wis. Stat. § 285.65(10), and requirements to submit compliance plans and schedules and progress reports, *id.* § 286.65(11).

26.    Violating an air pollution control permit and any conditions it contains is a violation of the Wisconsin SIP. Wis. Stat. § 285.60 and (7); Wis. Admin. Code § NR 406.10.

27.    The citizen suit provision of the Clean Air Act allows citizens, including Cambrians, to commence suit in a United States district court for violations of an emission standard or limitation.  42 U.S.C. § 7604(a).  An emission standard or limitation is defined to include any emission limitation, standard of performance, emission standard, any condition of a state SIP, any permit conditions, any New Source Performance Standard, and any requirement to obtain a permit as a condition of operations.  42 U.S.C. § 7604(f).

## THE DIDION MILLING PLANT IN CAMBRIA, WISCONSIN

28.    Didion Milling, Inc. has operated a grain mill in the Village of Cambria, Wisconsin, for approximately 19 years.

29.    The Plant is a source of particulate matter pollution emissions.

30.     Particulate air pollution is a significant health and welfare threat.

31.     In 2006, Didion began constructing an ethanol plant adjacent to its grain mill.  The ethanol plant began operating in 2008.

## CAUSES OF ACTION

32.     All paragraphs of this Complaint are incorporated by reference into each cause of action as if stated therein.

### *First Cause of Action: Operation in Violation of Permit*

33.     The Wisconsin SIP includes Wis. Stat. § 285.60(1)(a)1. and Wis. Admin. Code §§ NR 406.03 and NR 406.10, which require an air pollution source to obtain and comply with a construction permit when the source is constructed or modified.

34.     The Wisconsin SIP further provides that it is a violation to "fail[] to construct a stationary source in accordance with the application as approved by the [Wisconsin Department of Natural Resources]" and/or to "fail[] to construct and operate a stationary source in accordance with conditions imposed" by DNR. Wis. Admin. Code § NR 406.10.

35.     Defendant was issued permit 07-DCF-003 on September 4, 2007.  That permit and its requirements are still in effect.

36.     Permit 07-DCF-003 § I.U. requires Defendant to operate an air pollution monitor for at least thirty-six (36) months beginning on September 4, 2007, the permit issuance date.

37.     On numerous days, Defendant has failed to properly operate an air monitor as required by Permit 07-DCF-003.  Each such occasion constitutes a violation of the Permit and the Wisconsin SIP.

38.     Additionally, Defendant was required to notify the DNR by the next business day of certain violations of permit conditions, as required by Permit 07-DCF-003 § II.D and Wis. Admin. Code ch. NR 439.  Defendant did not inform the DNR of its failures to collect and report the air quality samples until, at the earliest, February 13, 2007. That "notification," however, did not comply with the requirements of Wis. Admin. Code ch. NR 439.

39.     Didion has not operated an air monitor on each day, as required by Permit 07-DCF-003, and has not informed the DNR on the next business day of each such failure.

40.     There is evidence that these violations have been repeated.

### _Second Cause of Action_: Violation of Wis. Admin. Code § NR 415.03

41.     Wis. Admin. Code § NR 415.03, which is also included in the Wisconsin SIP, prohibits "caus[ing] allow[ing] or permit[ing] particulate matter to be emitted into the ambient air which substantially contributes to exceeding of an air standard, or creates air pollution."

42.     One "air standard," within the meaning of NR 415.03, is Wis. Admin. Code § NR 404.03(3), which provides that "[t]he secondary standard for particulate matter measured as total suspended particulates is 150 micrograms per cubic meter - maximum 24-hour average concentration, not to be exceeded more than once per year."

43.     On a sporadic basis from approximately July 20, 2006, to the present, Didion has operated air pollution monitors that test for total suspended particulates.

44. Didion chose the locations of the monitors as being representative of air quality impacted by Didion's emissions.

45. The air quality monitor has shown violations of the standard in Wis. Admin. Code § NR 404.03(3) on at least the following days:

> a) April 30, 2007;
> b) May 3, 2007;
> c) May 18, 2007;
> d) May 24, 2007;
> e) May 30, 2007;
> f) June 11, 2007;
> g) June 13, 2007;
> h) June 29, 2007;
> i) February 21, 2008;
> j) March 13, 2008;
> k) April 24, 2008;
> l) July 29, 2008; and
> m) August 4, 2008;

46. The particulate matter collected in the monitor samples on the days set forth above contained grain and corn. On many of these dates, the measured concentrations were significantly in excess of the air standard. Defendants contributed to the violations measured on the days set forth above.

47. On each of the days set forth above, and likely on many additional days, Defendants violated Wis. Admin. Code § NR 415.03 by causing particulate matter to be emitted that contributed to violations of an air standard, including the air standard in Wis. Admin. Code § NR 404.03(3).

48. There is evidence that these violations have been repeated.

### *Third Cause of Action: Construction of Hammermills Without a Permit*

49.     Didion submitted a permit application to the DNR on or about May 26, 2006, seeking permission to construct an ethanol production process and associated equipment at the plant.

50.     Didion received Permit No. 06-DCF-166 on October 19, 2006.

51.     Didion submitted a permit application to the DNR on or about January 8, 2007, seeking to revise Permit No. 06-DCF-166.  Didion

52.     Didion subsequently received Permit 07-DCF-003.

53.     Didion's applications for Permits 06-DCF-166 and 07-DCF-003 did not include new "hammermills" to be located at the milling and ethanol plant site for serving the ethanol plant.

54.     The permits issued by the DNR at Defendant's site did not include authorization to construct and operate new hammermills, and the hammermills were not exempt from the requirement to obtain a permit.

55.     Defendants constructed new grain hammermills adjacent to the new ethanol plant emission source.

56.     By constructing the hammermills without authorization in a permit issued by the DNR, Defendant violated Wis. Stat. § 285.60(1)(a)1., Wis. Admin. Code §§ NR 406.03 and NR 406.10, Permit 07-DCF-003 § I.ZZZ.3, and sections II.H and II.L of each of Didion's permits (06-DCF-166 and 07-DCF-003).

57.     Didion has operated the new hammermills.

58.    Each day that Defendants constructed and each day that Defendants operated the hammermills without a permit constitutes an additional and separate violation of Wis. Admin. Code § NR 406.10.

59.    Each day that Defendant failed to amend its pending operating permit application to identify the hammermills and their emissions, as required by Wis. Admin. Code §§ NR 407.05(4), (9) and (10), constitutes an additional and separate violation of each of those requirements.

60.    Additionally, Defendant is required to notify the DNR by the next business day of any violation.  Defendant failed to do so for each day of construction and operation of the hammermills.  Each such failure constitutes an additional, separate violation of section II.D of each of Defendant's permits and of Wis. Admin. Code § NR 439.03(4).

61.    There is evidence that each of these violations was repeated.

_Fourth Cause of Action_: Operation Outside of Required Baghouse Pressure Drop and Violation of Baghouse Recording and Reporting Requirements

62.    Permits 06-DCF-166 and 07-DCF-003 require Defendant to monitor and record the pressure drop across the baghouses located at the grain mill every eight (8) hours or once per day, whichever is more often. Permit 06-DCF-166 §§ I.J.1.c.(2), I.K.1.c.(2), I.L.1.c.(2), I.M.1.c.(2), I.N.1.c.(2), I.O.1.c.(2), I.P.1.c.(2), I.Q.1.c.(2), I.R.1.c.(2), and Permit 07-DCF-003 §§ I.L.1.c.(2), I.M.1.c.(2), I.O.1.c.(2)., I.R'.1.c.(2).

63.    Defendant is also required to monitor and record the pressure drop across each baghouse at least every 8 hours pursuant to Wis. Admin. Code §§ NR 439.04, NR 439.055(1)(a) and (2), which are contained in the Wisconsin SIP.

64. Defendant's own records indicate that it failed to record the pressure drop from the baghouses on at least twenty-seven days since December 26, 2006, when the connected processes were operating.

65. Each day that Defendant failed to record the pressure drop across a baghouse while the process or processes connected to the baghouse were operating constitutes a separate violation of:

    a) Permit 06-DCF-166 §§ 1.J.l.c.(2), 1.K.l.c.(2), 1.L.l.c.(2), 1.M.1.c.(2), I.N.l.c.(2), I.O.1.c.(2), I.P.1.c.(2), I.Q.l.c.(2), and/ or I.R.l.c.(2);

    b) Permit 07-DCF-003 §§ I.L.l.c.(2), I.M.l.c.(2), I.O.l.c.(2)., and/ or I.R'.1.c.(2);

    c) Section I.Y.4.A. of Permit 06-DCF-166;

    d) Section I.ZZZ.3 of Permit 07-DCF-003;

    e) Section II.L. of each permit;

    f) Wis. Admin. Code § NR 406.10;

    g) Wis. Admin. Code § NR 439.03(12);

    h) Wis. Admin. Code § NR 439.04(1);

    i) Wis. Admin. Code§ NR 439.04(2);

    j) Wis. Admin. Code § NR 439.055; and

    k) Wis. Stat. § 285.60.

66. Additionally, Defendant is required under Permits 06-DCF-166 and 07-DCF-003, to direct all milling plant emission sources to a baghouse, to maintain baghouse pressure between two (2) and five (5) inches of water.  Permit 06-DCF-166 §§ I.J.1.b.(3), I.J.1.c.(2), I.K.1.b.(3), I.K.1.c.(2), I.L.1.b.(3), I.L.1.c.(2), I.M.1.b.(3), I.M.1.c.(2), I.N.1.b.(3), I.N.1.c.(2), I.O.1.b.(3), I.O.1.c.(2), I.P.1.b.(3), 1.P.1.c.(2); Permit 07-DCF-003 §§ I.L.1.b.(3), I.L.1.c.(2), I.M.1.b.(3), I.M.1.c.(2), I.O.1.b.(3),1.0.1.c.(2).

67. On at least 408 occasions since January 14, 2007, Didion's records reflect the pressure drop across the baghouse was outside of the required two (2) to five (5) inches of water.

68.     Each time that Defendant failed to maintain pressure drop at each baghouse between two (2) and five (5) inches of water column constitutes a separate violation of:

    a) Permit 06-DCF-166 §§ I.J.1.b.(3), I.K.1.b.(3), I.L.1.b.(3), I.M.1.b.(3), I.N.1.b.(3), I.O.1.b.(3), and/ or I.P.1.b.(3);

    b) Permit 07-DCF-003 §§ I.L.1.b.(3), I.M.l.b.(3), and/ or I.O.1.b.(3);

    c) Wis. Stat. § 285.60;

    d) Wis. Admin. Code § NR 406.10;

    e) Section I.Y.4. of Permit 06-DCF-166;

    f) Section I.ZZZ.3 of Permit 07-DCF-003; and

    g) Section II.L. of each permit.

69.     Additionally, Defendant is required to notify the DNR by the next business day of each violation of the required baghouse pressure drop range. Defendant failed to do so.  Each such failure constitutes an additional, separate violation of section II.D of each of Defendant's permits and of Wis. Admin. Code § NR 439.03(4).

70.     There is evidence that these violations were repeated.

*Fifth Cause of Action*: *Concealing Emissions By Tampering With or Rendering A Monitoring Device Inaccurate.*

71.     Defendant is prohibited by Section II.K of permits 06-DCF-166 and 07-DCF-003 and by Wis. Admin. Code §§ NR 439.03(12) and NR 439.10 from using any article, process or method to conceal an emission, which would otherwise constitute a violation of an applicable rule, and from rendering inaccurate any monitoring device or method.

72.     Defendant rendered the particulate air quality monitor required by the DNR inaccurate by failing to report results from June, 2007, through at least February 2009, and, upon information and belief, by tampering with, disabling, shutting off, or otherwise manipulating the monitor to prevent a full and representative 24-hour sample from being recorded on numerous days.

73.     Each such occurrence constitutes a separate violation of Section II.K of each of Defendant's permits and of Wis. Admin. Code §§ NR 439.03(12) and NR 439.10.

74.     Additionally, Defendant failed to report each of these violations to the DNR by the next business day, in violation of section II.D of each of Defendant's permits and of Wis. Admin. Code § NR 439.03(4).

75.     There is evidence that each of these violations was repeated.

*Sixth Cause of Action*: *Emissions of Excess Particulate Matter from the Grain Dryer*.

76.     Permit 07-DCF-003 § I.S''.1.a.(1) contains the following requirement for the milling plant's grain dryer, whose emission point is known as Stack 23 (S23): "the emissions may not exceed 6.96 lb/hr of PM and 1.74 lb/hr of PM10 from S23."

77.     Permit 07-DCF-003 § I.S''.1.b.(5) additionally specifies that Didion must "conduct a stack test of the grain dryer PM10 emission rate within 90 days of enclosure and stack venting of the grain dryer."

78.     On approximately January 3 and 4, 2008, a stack test was conducted for the grain dryer, S23.  The stack test measured Didion's particulate matter

emissions at a rate of 15.46 lb/hour from S23, well in excess of the 6.96 lb/hour rate permitted by Permit 07-DCF-003 § I.S''.1.a.(1).

79.     On April 14, 2008, the DNR notified Didion that "[a]ccording to the results of the S23 stack test, conducted on January 3 and 4, 2008[,] Didion allegedly operated in violation from September 27, 2007 until February 26, 2008."

80.     On November 18, 2008, Didion conducted five stack test runs of the grain dryer, S23.  Didion exceeded the limits for PM and PM10 allowed by Permit 07-DCF-003 § I.S''.1.a.(1) in all five test runs.  Results ranged from 14.41 to 27.71 lbs/hour for PM and 4.537 to 10.402 lbs/hour for PM10.

81.     On the dates identified above, and on every day since April 14, 2008, Didion caused a violation of Permit 07-DCF-003 § I.S''.1.a.(1).

82.     On the dates identified above, and on every day since April 14, 2008, Didion's permit violations resulting from excess PM and PM10 emissions from the grain dryer also caused a violation of Wis. Stat. § 285.60 and Wis. Admin. Code § NR 406.10, which require compliance with all permit terms and conditions, as well as Permit 07-DCF-003 §§ I.ZZZ.3, II.B., II.C., and II.L., and Wis. Admin. Code § NR 415.03.

83.     Didion did not inform the DNR of its violations of the permit provisions specified above by the next business day.  Each day that it failed to do so constitutes a separate violation of Permit 07-DCF-003 § II.D. and Wis. Admin. Code § NR 439.03(4).

84.     There is evidence that each of these violations has been repeated.

*Seventh Cause of Action:  Failure to Control Fugitive Emissions from the DDGS Storage Area at the Ethanol Plant.*

85.     Permit 07-DCF-003 I.W.1.(a)(1) provides that "[n]o person may cause, allow or permit any materials to be handled, transported or stored without taking precautions to prevent particulate matter from becoming airborne.  Nor may a person allow a structure . . . to be used, constructed, altered, repaired, sand blasted or demolished without taking such precautions."

86.     Wis. Admin. Code § NR 415.04 contains a similar requirement.

87.     In order to demonstrate compliance with Section I.W.1.(a), Permit 07-DCF-003 § I.W.1.b. required Didion to take a number of measures, including:

a.  Evaluating the parking and material handling area conditions on a daily basis, and evaluating other areas of the plant as needed.

b.  Cleaning, sweeping, and removing dust material from the parking and material handling areas and other areas as needed.

c.  Using fabric spout extensions, covered conveyers, or other controls where practical.

d.  Maintaining and following a fugitive dust plan.

e.  Taking precautions to prevent particulate matter from becoming airborne, including application of water, suitable chemicals, or plastic covering on material stockpiles and other surfaces which can create airborne dust, and installation of hoods, fans, and air cleaning devices to enclose and vent the areas where dusty materials are handled.

88.    Wis. Admin. Code § NR 415.04(1) requires similar measures.

89.    Permit 07-DCF-003 § I.W.1.c.(2) additionally requires Didion to keep daily records of evaluations, cleaning, sweeping and dust removal activities, including documentation of protocol used to evaluate the parking and material handling area and determinations of when cleaning, sweeping, and dust removal are needed.

90.    Didion failed to control fugitive dust emissions from the wet distiller's grain handling and storage facility at the ethanol plant, known as Stack 33B or S33B.

91.    For each day Didion failed to enclose the DDGS handling and storage facility known as S33B, and failed to take other measures to control fugitive emissions of PM and PM10 from this facility such as cleaning and venting the facility and covering the wet distiller's grain piles, Didion violated Permit 07-DCF-003 § I.W.1.b. and Wis. Admin. Code § NR 415.04(1).

92.    Each day that Didion violated Permit 07-DCF-003 § I.W.1.b by failing to prevent fugitive emissions from the wet distiller's grain storage and loadout facility (S33B), Didion also caused or contributed to a violation of Permit 07-DCF-003 § I.W.1.a(1) and (2)  and Wis. Admin. Code § NR 415.03.

93.    For each day that Didion violated Permit 07-DCF-003 § I.W.1.a. and b., Didion has also violated Permit 07-DCF-003 §§ I.W.1.c.(2), I.ZZZ.3, II.B., and II.C.

94.    Additionally, every violation of any permit condition also constitutes a violation of Wis. Stat. § 285.60 and Wis. Admin. Code § NR 406.10.

95.    Didion did not inform the DNR of its violations of the permit

18

provisions specified above by the next business day.  Each day that Didion failed to notify the DNR on the next business day of each of the violations identified in this Cause of Action constitutes a separate violation of Permit 07-DCF-003 II.D. and Wis. Admin. Code §§ NR 439.04(1); NR 439.04(2); and NR 439.03(4).

96.    There is evidence that each of these violations has been repeated.

*Eighth Cause of Action*:  *False Certification*.

97.    On June 27, 2008, Didion applied to modify or replace Permit 07-DCF-003 and to revise proposed permit 111081520-F02.

98. Didion's application contained a signed certification stating that "I certify that the facility described in this air pollution permit application is fully in compliance with all applicable requirements."

99. Each day that Didion submitted an application for a permit pursuant to NR 407, which included a false statement that Didion was in compliance with all applicable requirements, including but not limited to June 27, 2008, constitutes a separate violation of Wis. Admin. Code § NR 407.05(10).

100.    Each day that Didion failed to correct its permit applications' false statements regarding compliance, including each day since June 27, 2008, constitutes a separate violation of Wis. Admin. Code § NR 407.05(9).

101.    Each day that Didion falsely certified compliance with applicable operating permit requirements constitutes a separate violation of Wis. Admin. Code § NR 439.03.

102.    There is evidence that each of these violations has been repeated.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request the following relief:

A)      A declaration that Didion has violated the Clean Air Act in the manners described above.

B)      A permanent injunction prohibiting Defendant from violating the Clean Air Act, the Wisconsin SIP, and permit provisions above;

C)      An injunction requiring Didion to off-set past illegal emissions by controlling emissions more than otherwise required, or by buying and retiring emission credits prospectively;

D)      An Order requiring Defendant to hire and pay for an independent third party to conduct the monitoring and reporting required of Defendant;

E)      An Order requiring Didion to pay a fine of up to $32,500.00 or $37,500.00 per day for each separate violation of the Clean Air Act, 42 U.S.C. § 7604(g); 40 C.F.R. § 19.4; 74 Fed. Reg. 626 (January 7, 2009).

F)      An Order requiring Didion to pay $100,000 for a beneficial mitigation project, which is consistent with the Clean Air Act and enhances the public health and the environment by decreasing particulate matter in the ambient air in the immediate vicinity of Defendant's operation and in the area where Plaintiffs live, work and recreate.  42 U.S.C. § 7604(g)(2).

G)      An Order requiring Didion to pay the costs of litigation, including Cambrians' reasonable attorneys' fees and expert witness fees.  42 U.S.C. § 7604(d).

H)      An order retaining jurisdiction over this action to ensure compliance with the Court's Order.

I)      All other relief the Court deems just and proper.

## JURY PLEA

Plaintiffs request a jury trial on all issues permitted to be tried to a jury.


Respectfully submitted June 26, 2009.

Attorneys for Plaintiffs
**MCGILLIVRAY WESTERBERG & BENDER LLC**


 /s/ Christa Westerberg_____
Christa Westerberg
State Bar No. 1040530
westerberg@mwbattorneys.com
David C. Bender
State Bar No. 1046102
bender@mwbattorneys.com

305 S. Paterson St.
Madison, WI  53703
(608) 310-3560 ph
(608) 310-3561 fax

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

CAMBRIANS FOR THOUGHTFUL
DEVELOPMENT, U.A., JOHN MUELLER,
LEONORE NEUMANN,

        Plaintiffs,

    v.                                        Case No. 3:09-cv-139

DIDION MILLING, INC.,
DIDION ETHANOL, LLC,

        Defendant.

---

## CERTIFICATE OF SERVICE

---

        I hereby certify that on June 26, 2009, I caused a true and correct copy of Plaintiffs' Second Amended Complaint and all accompanying documents to be served upon all of the parties appearing in this cause of action through the United States District Court for the Western District of Wisconsin's CM/ECF system per Local Rule 5.1:

Eric C. McLeod
Michael Best & Friedrich LLP
One South Pickney Street, Suite 700
Madison, WI  53703
Email: emmcleod@michaelbest.com,  sktrotter@michaelbest.com

                                        /s/Christa Westerberg
                                        Christa Westerberg